UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| QWEST COMMUNICATIONS CORPORATION, a Delaware corporation,<br><br>                  Third-Party Plaintiff,<br><br>vs.<br><br>FREE CONFERENCING CORPORATION, a Nevada corporation,<br><br>                  Third-Party Defendant. | 4:07-CV-04147-KES<br><br>MEMORANDUM OPINION AND ORDER |

Third-party plaintiff, Qwest Communications Corporation (Qwest), brought claims against third-party defendant, Free Conferencing Corporation (FC), alleging that FC engaged in conduct amounting to unfair competition, civil conspiracy, and alternatively that FC was unjustly enriched. This court found that Qwest failed to prove its claims. On appeal, the Eighth Circuit Court of Appeals affirmed this court's decision on the unfair competition and intentional interference with a business relationship claim, but reversed and remanded on the claim for unjust enrichment. *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 893 (8th Cir. 2016) (hereinafter *Free Conferencing*).

**FACTUAL BACKGROUND**

Qwest is a long-distance telephone service provider, referred to as an interexchange carrier (IXC). As an IXC, Qwest delivers long-distance calls from one local area to another. Docket 407 at 2. FC provides conference calling services to its customers, operates a website, and provides 24-hour customer support. *Id.* FC does not charge customers for its services and is not a common carrier under the Communications Act of 1934, as amended. *Id.*

Sancom, Inc. is a local telephone service provider, referred to as a local exchange carrier (LEC), for the Mitchell, South Dakota area. *Id.* As an LEC, Sancom owns the facilities that allow calls carried by IXCs, such as Qwest, to be originated and terminated with Sancom's customers. *Id.* at 3. Sancom, a common carrier, is regulated by and filed tariffs with both the Federal Communications Commission (FCC) and the South Dakota Public Utilities Commission. *Id.*

The Communications Act of 1934 governs the contractual relationship between an IXC and an LEC. Section 203(c) of the Communications Act provides that "[n]o carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in [wire or radio communication] unless schedules have been filed and published in accordance with the provisions of this chapter." 47 U.S.C. § 203(c). It requires LECs such as Sancom to assess interstate access charges against carriers such as Qwest "either by filing tariffs with the [FCC] or by negotiating contracts." *In re Sprint Commc'ns Co. v. N. Valley Commc'ns, LLC*, 26 FCC Rcd. 10780, 10782 (2011).

An LEC may not charge an IXC a fee for terminating calls to local customers that is not specified in the tariff. *In re AT&T Corp. v. All Am. Tel. Co.*, 28 FCC Rcd. 3477, 3494 (2013). But LECs may receive some compensation from IXCs for calls they deliver to noncustomers. *Qwest Commc'ns Corp. v. Farmers & Merchs. Mut. Tel. Co.*, 24 F.C.C. Rcd. 14801, 14812 n.96 (2009) (hereinafter *Farmers II*).

Sancom's tariff permitted it to charge IXCs, including Qwest, more than three cents per minute for calls it delivered to an "end user." *Free Conferencing*, 837 F.3d at 893. An "end user" is defined in the tariff as an individual or entity "which subscribe[d] to the services" Sancom offered. *Id.* Thus, Sancom could not charge IXCs under the terms of the tariff unless it delivered a call to an individual or entity that subscribed to its services.

In 2004, FC and Sancom entered into an agreement that provided that Sancom would host FC's conference call bridges on its premises in Mitchell, South Dakota. Docket 407 at 6. FC guaranteed its conference call bridges would increase call traffic to Sancom's service area, and in return, Sancom paid FC a "marketing fee" of 2 cents for each minute of call traffic that terminated at FC's conference call bridges. *Id.* Thus, FC increased the volume of call traffic IXCs delivered to Sancom and Sancom subsequently billed IXCs under its tariff for the increased traffic. *Id.* Sancom would then pay FC its marketing fee. *Id.* In effect, this contract resulted in Sancom and FC splitting the access charges paid by the IXCs on calls destined for FC's conference bridges. *Id.*

3

"Today, it is well-settled that an LEC cannot bill an IXC under its tariff for calls 'terminated' at a conference call bridge when the conference calling company does not pay a fee for the LEC's services." *Free Conferencing*, 837 F.3d at 894. At the time that FC and Sancom first entered into their contract, however, that issue had not been litigated. *Id.* Then in 2009, the FCC "held that an LEC could not charge an IXC under its tariff for calls delivered to a conference call bridge when the conference call company did not pay a fee to subscribe to the LEC's services." *Id.* at 894 (citing to *Farmers II*, 24 F.C.C. Rcd. at 14801).

In May 2014, this court held a bench trial on Qwest's claims against FC and ruled in favor of FC on all claims. *Id.* at 892. On appeal, the Eighth Circuit Court of Appeals upheld this court's judgment finding against Qwest on Qwest's claims of intentional interference with a business relationship and unfair competition. *Id.* at 893. But the Eighth Circuit reversed and remanded this court's judgment on Qwest's claim for unjust enrichment. *Id.*

## DISCUSSION

To prove a claim for unjust enrichment under South Dakota law, "the plaintiff must prove (1) it conferred a benefit upon another; (2) the other accepted or acquiesced in that benefit; and (3) it would be inequitable to allow the other to retain that benefit without paying." *Id.* at 899 (citing to *Dowling Family P'ship v. Midland Farms*, 865 N.W.2d 854, 862 (S.D. 2015). "[T]he relevant inquiry is whether the circumstances are such that equitably the

4

beneficiary should restore to the benefactor the benefit or its value." *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003).

Here, Qwest has shown that it conferred a benefit upon FC and that FC accepted that benefit. The only issue is whether it would be inequitable to allow FC to retain that benefit without paying Qwest. In South Dakota, "[u]njust enrichment . . . allows an award of restitution for the value of the benefit unjustly received, rather than the value of the services provided." *Johnson v. Larson*, 779 N.W.2d 412, 418 (S.D. 2010). "South Dakota measures damages for unjust enrichment based on the amount the beneficiary received unjustly, not the amount the benefactor lost." *Free Conferencing*, 837 F.3d at 900.

In *Parker v. Western Dakota Insurors, Inc.*, 605 N.W.2d 181, 187 (S.D. 2000), the South Dakota Supreme Court found that plaintiff could not maintain a claim for unjust enrichment against defendant because the defendant paid for the benefit. Defendant purchased substantially all of a competing insurance agency's income-generating assets and the purchase agreement specifically excluded any of the insurance agency's debts or accounts payable. *Id.* at 183-84. Plaintiff, a former insurance agent, was entitled to a portion of her commissions from the insurance agency, but defendant never made payments to plaintiff after it purchased the agency's assets. *Id.* at 184. The South Dakota Supreme Court found that defendant had received a benefit from plaintiff and was aware of the benefit, but that it was not inequitable for defendant to keep the benefit because it paid for it. *Id.* at 187. The Court found that the insurance agency was the actor who violated the

5

plaintiff's contract when it sold its right to receive renewal commissions without arranging for the plaintiff's commissions, but the defendant paid for those commissions and was not unjustly enriched. *Id.* at 187.

Here, FC provided conference calling services, 24-hour customer support, and access to a website in exchange for 2 cents per minute for calls placed to FC's conferencing bridges at Sancom. Docket 407 at 2. Qwest paid its own conference calling vendor, Genesis, between 2 to 4.5 cents per minute. So while FC received a benefit from Qwest, it earned that benefit. FC's receipt of the benefit was not unjust. Thus, it would not be inequitable for FC retain the benefit in question.

## CONCLUSION

In conclusion, FC was not unjustly enriched. Thus, it is

ORDERED that judgment will be entered in favor of third-party defendant, Free Conferencing Corporation, and against third-party plaintiff, Qwest Communications Corporation.

DATED November 9, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE